IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

LARRY A. WRIGHT                                           PLAINTIFF

v.                        Case No. 2:12-2089

C. WATTS AND SONS CONSTRUCTION
CO., INC. AND TRAVELERS CASUALTY
AND SURETY COMPANY OF AMERICA                            DEFENDANTS

<u>**MEMORANDUM OPINION AND ORDER**</u>

Before the Court are Defendant Travelers Casualty and
Surety Company of America's ("Travelers") Motion to Dismiss and
Supporting Brief (Doc. 9). Plaintiff Wright has responded and
Travelers has replied. (Docs. 12, 14). Following the filing of
Wright's Amended Complaint (Doc. 3), Travelers filed a second
Motion to Dismiss, incorporating the first by reference. (Doc.
24). For reasons set forth herein, Travelers' first Motion to
Dismiss (Doc. 9) is DENIED AS MOOT and Travelers' second Motion
to Dismiss (Doc. 24) is GRANTED.

**I.   Background**

Wright filed a Complaint in Sebastian County Circuit Court
on March 20, 2012. (Doc. 3). On April 18, 2012, Defendant C.
Watts and Sons Construction Co., Inc. ("Watts and Sons") removed
the case to federal court based on diversity jurisdiction, as
Wright is the only citizen of Arkansas. (Doc. 1). The
Complaint was amended on September 19, 2012. (Doc. 22). For

purposes of this Motion, the following facts, taken from the Amended Complaint, are assumed true and viewed in the light most favorable to Wright.

In 2010, Watts and Sons was awarded a contract by the Arkansas State Highway Commission to make improvements to Highway 71 in Sebastian County, Arkansas.  The contract included a bond that Watts and Sons executed with Travelers.  Wright owns property adjacent to a portion of the highway that is under construction.  On June 16, 2010, Watts and Sons contracted with Wright to take fill material from his land and park an office trailer on the property over a period from 1 to 18 months.  In exchange, Watts and Sons agreed to pay Wright $5,000.00 as an advance prior to excavation and seventy cents per cubic yard of fill[1].  Watts and Sons agreed to smoothly grade all areas it disturbed.  By letter agreement dated July 30, 2010, Watts and Sons acknowledged that it would also build a parking lot for Wright on his land and that it would remove debris from and re-seed grass on the area on which it would burn debris.  It also agreed to grade and re-seed all haul roads on Wright's property.

Wright alleges that Watts and Sons excavated outside of the agreed upon area, took over 125,000 cubic yards, used the property as a dumping site and parking lot for dozens of

---

[1] The contract specified that the "approximate amount of the material required (common fill) is plus/minus 50,000 cubic yards" but that the amount "can be subject to change and project requirements."  (Doc. 21, Ex. A.)

vehicles, performed work in such a manner as to create a flood
risk from inadequate drainage and a safety risk from buried and
improperly stored debris.   Wright also alleges that Watts and
Sons has held over on the contract and failed to pay rent for
the staked property during the holdover and has not paid any
rent for the property it used outside of the staked area.
Finally, Wright alleges that Watts and Sons failed to build the
parking lot at the agreed-upon elevation.   The Complaint seeks
damages for breach of contract, trespass and negligence and
requests an injunction against Watts and Sons from making
further modifications to Wright's property while litigation is
pending.

Wright alleges that by issuing a bond, Travelers has
guaranteed payment for damages caused by Watts and Sons if they
cannot pay.

Travelers has moved to dismiss the Complaint pursuant to
Fed. R. Civ. P. 12(b)(6), contending that Wright has failed to
state a claim against Travelers upon which relief can be
granted.

## II.  Standard of Review

Dismissal is proper if Plaintiffs' complaint fails to state
a claim upon which relief can be granted. Fed. R. Civ. P.
12(b)(6).  The factual allegations in the complaint must be
taken as true and construed in the light most favorable to the

plaintiff. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007); *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009). A complaint should not be dismissed for failure to state a claim unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Thomas W. Garland, Inc. v. City of St. Louis,* 596 F.2d 784 (8th Cir. 1979).

## III. Discussion

At issue is the Arkansas State Highway Commission bond which lists Travelers as surety and Watts and Sons as principal. Wright did not attach a copy to his complaint, but Travelers included a copy as Exhibit A to its motion to dismiss and incorporated supporting brief. (Doc. 9). The bond is unsealed, undated and contains only the signature of a representative of "Licensed Agent, State of Arkansas." It is in the amount of $9,035,798.51, which is stated to be 80% of the contract amount.

The bond is entitled "Statutory Payment Bond", secures unpaid claims for materials, labor and supplies used in the course of the work, and by its terms was executed pursuant to Arkansas Code Annotated § 18-44-503 and § 22-9-401. In Arkansas, special bond statutes have been passed because contractors cannot create a lien against a public property when working for a public entity. The first act was passed in 1911, and is codified under the Mechanic's and Materialmen's Liens

section of the Code.  The second act was passed in 1929 and is in the Public Property/Public Works section of the Code. Section 18-44-503 provides that in all contracts over $20,000 for public construction projects, the contractor must furnish a bond, and that all persons who have a claim against the bond may bring an action against the surety.  Section 22-9-401 provides that all surety bonds required by state agencies for the construction of public works "shall be liable on all claims for *labor and materials* entering into the construction, or necessary or incident to or used in the course of construction, of the public improvements." (Emphasis added.)

The Arkansas Supreme Court has noted that § 22-9-401 cannot be reasonably interpreted to require protection for claims based on negligence.  *United States Fidelity and Guaranty Company v. Little Rock Quarry Company, Inc.*, 309 Ark. 269, 272 (1992)(statute contains considerable language defining the scope of claims for labor and materials).  Therefore, Wright's claims against Travelers that involve Watts and Sons' alleged negligence must fail as a matter of law.  The same is true for Wright's trespass claims; they are not within the scope of protection afforded by the legislature to furnishers of labor and materials used in or incident to the construction of public works.

This leaves Wright's breach of contract claims. The ten enumerated allegations fall into two categories. The first consists of claims that Watts and Sons generally abused Wright's property by excavating outside of the agreed upon area, taking water without authorization, using it as a dumping site, storage and equipment parking lot and failing to build the parking area Wright requested and which was made a part of the contract. The second includes Wright's claims that Watts and Sons took over 125,000 cubic yards of fill material and in addition, has held over on the contract and failed to pay rent for property used outside the staked areas.

The statute requiring the giving of a bond by contractors was intended to protect those providing labor and materials used in construction. Bonds given under it must be construed liberally in order to effectuate the purpose of the legislature. *Detroit Fidelity & Sur. Co. v. Yaffe Iron & Metal Co.*, 184 Ark. 1095 (1932)(pipe purchased by appellee was necessary to and was used in the construction, even though the pipe was not incorporated into and did not become a part of the construction itself.) *Yaffe* was decided with reference to Act 368 of 1929, which guaranteed payment of legitimate claims for all items incident and contingent to the work, specifically,

> [A]ll claims for labor, material, camp equipment, fuel
> including oil and gasoline, food for men and feed for
> animals, labor and material expended in making repairs

> on machinery or equipment used in connection with the
> construction of said public buildings or works
> aforesaid, lumber and material used in making forms
> and supports and all other supplies or things entering
> into the construction, or necessary or incident
> thereto or used in the course of construction of said
> public buildings or public works; said bonds shall
> also be liable for rentals on machinery, equipment,
> mules and horses used in the construction of said
> public buildings or public works....

Section 22-9-401, which had its genesis in Act 368, speaks in

similar terms:

> (b) Claims for labor and materials shall include, but
> not be limited to, fuel oil, gasoline, camp equipment,
> food for workers, feed for animals, premiums for bonds
> and liability and worker's compensation insurance,
> rentals on machinery, equipment, and draft animals,
> and taxes or payments due the State of
> Arkansas...which shall have arisen on account of, or
> in connection with, wages earned by workers on the
> project covered by the bond.

Although the language in the two statutes is not identical,

each limits its application to persons who actually performed

labor or services, or furnished equipment or materials to the

project. Arkansas' statute is based on similar language within

The Miller Act, which identifies those who may sue on a payment

bond as "Every person who has furnished labor or material in the

prosecution of the work provided for a contract for which a

payment bond is furnished...." 40 U.S.C. § 3133(b)(1)(2006).

Unfortunately, neither The Miller Act nor Arkansas' "Little

Miller Act" defines "materials." Under any definition of

"materials", Wright's first category of claims for misuse of his

property must fail.  These allegations are a restatement of his negligence and trespass claims, which are in the nature of damage to property, not payment for use of materials.

The second category requires a deeper inquiry.  It involves Wright's allegations that Watts and Sons (1) took over 125,000 cubic yards of dirt from his land and (2) failed to pay rent for the property it used outside the agreed-upon area.

The contract provides that Watts and Sons pay Wright seventy cents per cubic yard for fill material. Although the stated quantity of fill expected to be required by the construction was 50,000 cubic yards, the contract clearly states that the amount can be subject to change and project requirements.  Even the broadest interpretation of Arkansas Code Annotated § 22-9-401 does not support Wright's claim that the surety bond covers damages from taking too much material, especially when there are no allegations that the material was not paid for at the contract rate, which is the essence of the payment bond requirement.

This leaves Wright's claims that Watts and Sons failed to pay rent for land it used outside of the agreed-upon area. Arkansas Code Annotated § 18-44-147 defines "material supplier" as "any person who supplies materials, goods, fixtures, or any other tangible item to the contractor."

The Court can find no instance, nor has Wright pointed to any, in which a court in Arkansas has found rental of real property itself or damage to rented real property to be within the scope of any labor and materials payment bond. Under the state statute, "materials" have been found to include items such as tools (*National Sur. Corp. v. Ideal Lumber Co.*, 249 Ark. 545 (1970)), pipes (*Yaffe Iron & Metal*, 184 Ark. 1095 (1932)), road materials (*Little Rock Quarry*, 309 Ark. 269 (1992)), and asphalt (*State ex rel. Berry Asphalt Co. v. Western Sur. Co.*, 223 Ark. 344 (1954)).   Leased materials that have been recognized as subject to the bond under The Miller Act or Arkansas law have included trucks supplied to a subcontractor to haul materials (*Basich Bros. Const. Co. v. U.S., for Use of Turner,* 159 F.2d 182 (9th Cir. 1946)), tractors used on a dam project (*Roane v. U.S. Fidelity & Guaranty Co.*, 378 F.2d 40 (10th Cir. 1967)), earth-compacting machine (*Arnold v. Koehring Co.*, 242 Ark. 415 (1967)), dirt-moving equipment used in constructing improvements to a municipal airport (*Continental Cas. Co. v. Clarence L. Boyd Co.*, 140 F.2d 115 (10th Cir. 1944)), cars, track and equipment used in work on a naval training station (*Illinois Sur. Co. v. John Davis Co.*, 244 U.S. 376 (1917)), plaster planks and scaffolding planks furnished to a subcontractor (*United States, for Use and Benefit of P.A. Bourquin & Co. v. Chester Const.*

*Co.*, 104 F.2d 648 (2d Cir. 1939)), and construction equipment (*National Sur. Corp v. Edison*, 240 Ark. 641 (1966)).

Despite a liberal reading, alleged unpaid rent for use of real property in a state construction project does not appear to fall within the broad scope of "materials" covered by the Contractor's Bonds statute.

While Wright's claims against Watts and Sons may or may not stand, Wright has failed to state a claim for which relief can be granted against Travelers. In the absence of any statement that labor was performed or materials furnished for which payment has not been made, Plaintiff's claims against Travelers are dismissed.

## IV.  Conclusion

For the reasons set out herein, Travelers' Motion to Dismiss (Doc. 9) is DENIED AS MOOT and its Motion to Dismiss (Doc. 24) is GRANTED. All claims against Travelers are DISMISSED without prejudice. All parties are to bear their own costs and fees.

**IT IS SO ORDERED** this 27th day of September, 2012.

/s/ Robert T. Dawson
Honorable Robert T. Dawson
United States District Judge